Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1764 | **DATE** | 2/24/2003 |
| **CASE TITLE** | PALMER vs. COMBIINED INSURANCE CO. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry] **Motion (8-1) to strike class allegations is denied in full.** |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 26 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 22 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



BRENDA PALMER, on behalf of herself
and others similarly situated,

Plaintiff,

v.

COMBINED INSURANCE COMPANY
OF AMERICA,

Defendant.

No. 02 C 1764
Judge James B. Zagel



# MEMORANDUM OPINION AND ORDER

Introduction

This is a sex discrimination action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* by Brenda Palmer, both individually and on behalf of others similarly situated. On December 13, 2001, Ms. Palmer and nine other women filed a class action before Judge Alesia against defendant, Combined Insurance Company of America ("Combined"), seeking injunctive and legal relief. On February 5, 2002, Judge Alesia severed, with leave to refile, all but one of the original ten plaintiffs, which included Ms. Palmer. As the only incumbent employee of Combined among the currently named plaintiffs, Ms. Palmer brought this action for damages on her own behalf and also for equitable relief under Fed. R. Civ. P. 23(b)(2). Now, Combined has moved to strike the class allegations from Ms. Palmer's complaint, arguing that the proposed class cannot meet the requirements of Fed. R. Civ. P. 23(a). Combined also requests that if the class allegations are not stricken, Ms. Palmer's claim for class-wide punitive damages be stricken. At this point, no discovery has been conducted.

Background

Combined is an insurance company specializing in health, accident and life insurance products sold throughout the United States. These insurance products are sold by sales agents spanning the country who are overseen by managers, who are themselves supervised by a higher level of management. Combined is one of the last (if not the very last) vestiges of the "door-to-door" salesmen variety of insurance selling. These salesmen do not work in an office; rather, they work on their own and control their working conditions and schedules, meeting with and contacting clients at their homes or in restaurants and other public places. They work solely on a commission basis and receive no salary from Combined.

In Combined, there are twelve separate sales divisions, each managed by a divisional manager. Each sales territory is divided into regions, which are supervised by regional managers. Each region is divided into sub-regions, sub-regions into districts and districts into territories, and these units are managed by sub-regional managers, district managers and territorial managers, respectively. Divisional and regional managers and the sales agents whom they oversee regularly attend large, multi-day sales meetings known as "Ardmores."

Combined operates on a strict pyramid system in which nearly every manager must advance from within, and almost every top manager (including the chief executive) started as a sales agent (the lowest level) and worked his way up through the pyramid system. Its founder, W. Clement Stone, established the principle that a strictly-commission sales force must be motivated emotionally as well as financially, and that principle remains ingrained in Combined's philosophy today.

It is Ms. Palmer's contention that this pyramid-structured, "Positive-Mental-Attitude" regime not only disadvantages female employees, but also cultivates and encourages an environment in which the disparagement and denigration of women flourishes. Ms. Palmer alleges that at the Ardmores (the Ardmore being one of the few times that sales agents and managers are brought together), female agents are continually and regularly stigmatized and publicly degraded, which results not only in emotional distress and humiliation for these women, but also allows managers (who are predominantly men) to give them inferior sales opportunities and deny them equal consideration for promotion. In addition, Ms. Palmer asserts that top managers see this mistreatment firsthand on a regular basis and do nothing, and whenever a female agent complains to higher management of sexual discriminatory treatment, her complaint is superficially addressed, but, for all intents and purposes, is essentially ignored.

Class Allegations

*Fed. R. Civ. P. 23(a) Requirements*

Combined argues that the class allegations of Ms. Palmer's complaint must be stricken because on their face, they cannot meet the commonality, typicality and adequacy requirements of Fed. R. Civ. P. 23(a). According to *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982), it is sometimes possible to determine from the pleadings alone that these requirements cannot possibly be met, and in such cases, striking class allegations before commencing discovery is appropriate. Under Fed. R. Civ. P. 12(f), "the court may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter."

Combined asserts that Ms. Palmer's class allegations are merely those "across-the-board" claims that *Falcon* distinguishes from allegations of discriminatory practices, the former inappropriate grounds for a class action. *See id.* at 159 n.15 ("[I]t is noteworthy that [with respect to class actions,] Title VII prohibits discriminatory employment *practices*, not an abstract policy of discrimination."). Combined describes Ms. Palmer's class allegations as a "laundry list" targeting "literally every employment decision made at Combined since 1994, including promotions, transfers, hiring, pay, training and the work environment," which amounts to nothing more than an "abstract policy of discrimination." Ms. Palmer's response is that her class allegations can be easily organized into three categories, (1) denial of equal compensation opportunities, (2) denial of promotion and (3) hostile work environment, each meeting all requirements of Fed. R. Civ. P. 23(a).

With respect to the first requirement under Fed. R. Civ. P. 23(a), commonality, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Only one common issue is necessary, *Adams v. R.R. Donnelly & Sons*, 2001 WL 336830 at *5 (N.D. Ill. 2001), and a common nucleus of operative fact is usually sufficient to meet the commonality requirement. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Here, what Ms. Palmer alleges is a company-wide practice of sex discrimination that (1) enables managers to justify their decisions to deny female agents the same opportunities for commissions as male agents; (2) allows managers to refuse promotions to women, and (3) nourishes a culture in which it is not only acceptable, but also commendable to degrade and insult female employees. Looking at these allegations alone, I cannot conclude that there is no question of fact common to this class, for it is possible that Ms. Palmer can produce evidence of a pattern or practice of discrimination at

Combined. It is also possible that no such evidence exists, but at this stage in the case, I cannot strike the class allegations for lack of commonality without more than Combined's arguments.

The second requirement under Fed. R. Civ. P. 23(a)(3), typicality, necessitates that representative plaintiff's claims be typical of the rest of the class. This requirement is met if the plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). The class allegations of this complaint allege that Combined's company-wide practices give rise to both Ms. Palmer's and the class members' claims, and these claims are based on the same legal theory, economic discrimination and hostile work environment because of sex under Title VII. Thus, I find that on their face, the class allegations of this complaint meet the typicality requirement of Fed. R. Civ. P. 23(a)(3).

Lastly, Fed. R. Civ. P. 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class. Combined argues that adequacy is not met because "the proposed class includes supervisors and upper-level managers (including Ms. Palmer), certification of the class would create the anomalous situation of having class members responsible for decisions to not promote or train other class members." It is "generally true that supervisory and nonsupervisory employees should not be placed in the same class." *Daniels v. FRB*, 194 F.R.D. 609, 618 (N.D. Ill. 2000). However, what Ms. Palmer and the class members seek is to change the alleged discriminatory practices at Combined, and simply because members of the class have been able to move up into managerial positions does not automatically create a conflict of interest. It is possible that those class members who have been able to advance within

Combined were only able to do so after considerable struggle to which men have not been subjected, and it is also possible that those women continued to experience discrimination even after being promoted in that they met resistance to moving even further up the ladder and/or continued to suffer in a hostile work environment. Without evidence that this is not the case, it appears that the representative parties to this action can adequately protect the interests of the class, despite positional differences between its members. Although is also possible that conflicts of interest that defeat adequacy do in fact exist, I cannot make this conclusion on the pleadings alone.

*Combining Economic Discrimination and Sexual Harassment Claims*

Combined makes another argument in favor of striking Ms. Palmer's class allegations, namely that the combination of economic discrimination and sexual harassment claims render the class allegations facially defective for two reasons: (1) the two categories require very different showings, and (2) both categories are inappropriate for class treatment because each presents its own unique problems due to their subjective nature.

To address the first argument: while it is true that in most cases, the factual inquiries surrounding an economic discrimination claim and a sexual harassment claim are fundamentally different, in this case, it is not necessarily so. Ms. Palmer's allegations are unusual in the sense that the economic discrimination claims and sexual harassment claims actually share a common nexus of facts. The economic discrimination and sexual harassment allegedly suffered by Ms. Palmer and the class members are, in a sense, sharing an umbrella of a larger, all-encompassing discrimination. In other words, Ms. Palmer's allegations can be summarized in the following

6

way: embedded within the very foundation upon which Combined rests is a chauvinistic and fundamentally misogynist view of women that is reflected in its company-wide practices and patterns, and the unusual structure of the company provides fertile ground for these practices and patterns. In turn, these company-wide practices and patterns nourish an overall culture in which female employees are mistreated, to the advantage and enjoyment of male employees. Two consequences of this culture are economic disadvantage and a hostile work environment for women. Thus, these otherwise separate forms of sex discrimination are actually caused by the same thing. Because of the rather unique nature of these allegations, I am rejecting Combined's argument for the present. After some discovery has been conducted, it may become apparent that the economic discrimination and sexual harassment claims do not have as much in common as Ms. Palmer alleges, but until that has been shown, I will not strike the class allegations for this reason.

With regard to the second argument, Combined correctly points out that both sexual harassment and economic discrimination are difficult cases for class treatment. What is apparent in *Meritor Sav. Bank v. Vinson*, 477 U.S. 57 (1986) and *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993), is that there is a clear subjective component to proving a sexual harassment claim brought by an individual plaintiff (i.e., was the allegedly offensive conduct subjectively unwelcome?). However, that subjective component is limited by an objective component, which is whether an objectively reasonable person would also find the allegedly offensive conduct unwelcome. *Harris*, 510 U.S. at 21-22; *Rennie v. Dalton*, 3 F.3d 1100, 1107 (7th Cir. 1993). Because the subjective component does not dominate the inquiry, sexual harassment could be amenable to class treatment. It is possible to conceive of a situation in which a pattern or

practice is objectively adverse (meaning that the alleged acts would have an adverse impact on a reasonable person). Clearly, sexual harassment is a form of sex discrimination, *Meritor*, 477 U.S. at 64-66, and Title VII authorizes a pattern or practice action for sex discrimination and therefore, sexual harassment. While it is rather rare for a pattern or practice action for sexual harassment to overcome the unique element of subjectivity present in a sexual harassment claim, it is not impossible. To prove hostile work environment, one must show that (1) the complainant, because of her sex, was subjected to hostile, intimidating or degrading conduct, verbal and nonverbal, that adversely affected her working conditions, and (2) the defendant's response (or lack thereof) to the allegedly offensive behavior was negligent. *Carr v. Allison Gas Turbine Div., General Motors Corp.*, 32 F.3d 1007, 1009 (7th Cir. 1994). Thus, to prove a pattern or practice case of hostile work environment, it must shown that (1) there was a company-wide hostile environment of sexual harassment, and (2) the defendant company had a policy of tolerating, condoning and/or fostering that hostile environment. Both of these elements are clearly alleged by Ms. Palmer. These are, admittedly, very tough hurdles to overcome. But at this stage in the case, Ms. Palmer is entitled to try.

Economic discrimination presents similar problems due to the subjective nature of the inquiry. *See, e.g., Patterson v. General Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980). However, economic discrimination, being a form of sex discrimination, can be the subject of a pattern or practice action under Title VII. The question is whether this particular case is amenable to a pattern or practice suit with respect to economic discrimination–Combined clearly does not think so. At this time, I disagree because this case, as I have mentioned previously, is unique in that what allegedly happened to each class member shares a common link, which is

Combined's unusual structure, which allows the alleged company-wide discriminatory practices to exist. At the risk of oversimplifying Ms. Palmer's argument, I will sum it up as follows: what each individual woman's qualifications were have very little, if nothing, to do with this case because in the eyes of the men at Combined, all women were exactly the same--women across the board were placed a mile behind the men before the race even started, and this attitude towards women inheres in the very fabric of what makes Combined the company that it is. This too will be very difficult to prove, but without some evidence that Ms. Palmer has no chance whatsoever, I will not prevent her from trying.

Punitive Damages

Combined requests that if I decide to let the class allegations stand, that I at least strike the class-wide request for punitive damages. Ms. Palmer is seeking both equitable and legal remedy, the legal remedy solely in the form of punitive damages. Combined raises the question that if the class allegations survive the motion to strike, are we dealing with a Fed. R. Civ. P. 23(b)(2) or 23(b)(3) class? Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) ("Rule 23(b)(2)") when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate injunctive relief or corresponding declaratory relief with respect to the class as a whole." While the Rule itself does not specifically address a situation such as this, when monetary damages are requested as well as injunctive relief, the advisory note does state that this subsection of Fed. R. Civ. P. 23 "does not extend to cases in which the appropriate relief relates exclusively or predominantly to money damages." Fed. R. Civ. P. 23(b)(2) advisory committee's note. The reason for this limitation on what kind

of damages are recoverable under a Rule 23(b)(2) is that there is no built-in insurance of personal notice or opportunity to opt out. Fed. R. Civ. P. 23(b)(3) ("Rule 23(b)(3)"), under which punitive damages are recoverable, and there is personal notice and opting-out opportunities, has a heightened standard. Class certification under this rule is appropriate when "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for he fair and efficient adjudication of the controversy." Rule 23(b)(3). Combined argues that even if Ms. Palmer can meet the Rule 23(b)(2) requirements, it is clearly impossible for her to meet the Rule 23(b)(3) standard.

Ms. Palmer argues that it is too early to make that determination, and even if that were the case, it is possible to recover both injunctive and monetary relief under Rule 23(b)(2) because in this case, the monetary damages are "incidental" to the requested injunctive relief. According to *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998), which was adopted by the Seventh Circuit in *Jefferson v. Ingersoll International, Inc.*, 195 F.3d 894, 898 (7th. Cir. 1999), class certification under Rule 23(b)(2) when both injunctive and monetary relief are requested is only permissible if the monetary damages are "incidental" to the injunctive relief. "Incidental," according to *Allison*, means that "damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief," thus independent of "the intangible, subjective differences of each class member's circumstances," and do not "require additional hearings to resolve disparate merits of each individual's case." 151 F.3d at 415. The problem for Ms. Palmer is, damages cannot be awarded until proof of discrimination and injury is shown, *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1005 (7th Cir. 2000), so deciding the damages claims will depend to some degree on each class member's circumstances.

Therefore, Ms. Palmer's punitive damages claims are not "incidental" to their request for injunctive relief. This is the analysis used by the Seventh Circuit in *Lemon v. International Union of Operating Engineers, Local No. 139, AFL-CIO*, 216 F.3d 577, 580-82 (7th Cir.2000).

However, the discussion does not end here, for *Lemon*, citing *Jefferson*, identifies three alternatives to limiting class certification to Rule 23(b)(2). 216 F.3d at 581. First, I can limit certification to Rule 23(b)(3) and determine whether the common questions predominate the individual ones and if a class action is the best way to adjudicate these claims. At this point, it is unclear if the questions common to the class predominate the questions pertaining to individual class members, but presently, it is possible that they do. While I do have concerns about the manageability of this potential class, which might reach numbers in the thousands, it is too early to conclude that there is a better way to handle this case. Therefore, it is possible that Ms. Palmer may be able to meet the Rule 23(b)(3) requirements.

The second alternative is to divide certification, certifying a Rule 23(b)(2) class for the equitable relief and a Rule 23(b)(3) class for the monetary relief. If I were to proceed in this way, the damages must be adjudicated first before a jury to preserve the Seventh Amendment right to a jury trial, since the Civil Rights Act of 1991 entitles the parties to a trial by jury on intentional discrimination claims, even if it also decides the equitable claims. *Jefferson*, 195 F.3d at 898. Thus far, I see no indication that this is not a viable choice. Third, I can certify the class under Rule 23(b)(2) for both the equitable and monetary relief, but then exercise my plenary authority under Fed. R. Civ. P. 23(d)(2) and Fed. R. Civ. P. 23(d)(5) to provide the class members with personal notice and the opportunity to opt out. *Id.* The district court in *Williams v. Burlington Northern, Inc.*, 832 F.2d 100, 103 (7th Cir. 1987) handled a class certification in this way, and the Seventh Circuit affirmed. This option also appears to be available in this case.

Because I am not yet convinced that any of these three alternatives are unfeasible, the punitive damages claims should stand until it becomes clear that class certification cannot be achieved by any of these routes. As it stands, Combined's request to strike the punitive class claims is premature.

Conclusion

Combined is a unique company in structure, and because of its unusual nature, these class allegations are also atypical. It is possible that this case may prove to be the rare exception to the general rule. At the same time, it is entirely possible that everything that Combined has argued is true and that class certification is doomed to fail. However, the pleadings alone do not prove this, and at this early stage in the case, Ms. Palmer is entitled to a shot at proceeding with the class action. Therefore, Combined's motion to strike the class allegations is denied in full.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: 24 February 2003