# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1764 | **DATE** | 8/29/2003 |
| **CASE TITLE** | Brenda Palmer vs. Combined Insurance Company of America | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order: Plaintiff's motion for class certification (27-1) is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

SEP 2 – 2003
date docketed

docketing deputy initials

8/29/2003
date mailed notice

Document Number

62

courtroom deputy's initials

FILED FOR DOCKETING
03 AUG 29 PM 1:27
CLERK
U.S. DISTRICT COURT

Date/time received in central Clerk's Office

mailing deputy initials



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRENDA PALMER, on behalf of herself
and others similarly situated,

       Plaintiff,

       v.

COMBINED INSURANCE COMPANY
OF AMERICA,

       Defendant.

No. 02 C 1764
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

This is a sex discrimination action brought under Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e *et seq.* by Brenda Palmer, both individually and on behalf of others

similarly situated. Ms. Palmer moves for class certification pursuant to Fed. R. Civ. P. 23 ("Rule

23").

## I.    BACKGROUND

### *A.*    *General*

The factual background of this case has been detailed in my prior opinion denying

defendant Combined Insurance Company of America's ("Combined") motion to strike Palmer's

class allegations dated February 24, 2003, part of which I will reiterate here:

> Combined is an insurance company specializing in health, accident and life
> insurance products sold throughout the United States. These insurance products
> are sold by sales agents spanning the country who are overseen by managers, who
> are themselves supervised by a higher level of management. Combined is one of
> the last (if not the very last) vestiges of the "door-to-door" salesmen variety of
> insurance selling. These salesmen do not work in an office; rather, they work on
> their own and control their working conditions and schedules, meeting with and

62

contacting clients at their homes or in restaurants and other public places. They work solely on a commission basis and receive no salary from Combined.

In Combined, there are twelve separate sales divisions, each managed by a divisional manager. Each sales territory is divided into regions, which are supervised by regional managers. Each region is divided into sub-regions, sub-regions into districts and districts into territories, and these units are managed by sub-regional managers, district managers and territorial managers, respectively. Divisional and regional managers and the sales agents whom they oversee regularly attend large, multi-day sales meetings known as "Ardmores."

Combined operates on a strict pyramid system in which nearly every manager must advance from within, and almost every top manager (including the chief executive) started as a sales agent (the lowest level) and worked his way up through the pyramid system. Its founder, W. Clement Stone, established the principle that a strictly-commission sales force must be motivated emotionally as well as financially, and that principle remains ingrained in Combined's philosophy today.

Ms. Palmer's allegations can be summed up as the following: (1) Combined's managers give female employees inferior sales opportunities and diminished prospects for success; (2) Combined gives fewer promotions to women than men; (3) female employees at Combined are sexually harassed on a regular basis; (4) Combined provides female employees with inferior training; and (5) even though Combined knows that all of these things are occurring, no effective steps to stop the behavior are taken.

### B.    Compensation

Ms. Palmer claims that during the relevant time period, between 1998 and 2001, Combined paid women significantly less than their male counterparts by giving women far fewer dollars in premium to work in the field than men. For sales agents and managers at Combined, earnings tie directly to the number of insurance products sold. Every week, an agent is assigned to work in a specific territory, and one source of business in that territory is the lead and referral

2

cards given to the agent on a weekly basis by the district manager. This constitutes the "premium worked." Agents are required to call on the clients identified on these cards to service the accounts, which includes renewing current policies and selling new products, thus retaining existing business and generating new business. Agents are also expected to use the client contacts to find and develop new leads and referrals. Ms. Palmer alleges that women received significantly less "premium worked" than men even though evidence shows that women were more successful than men in renewing the premiums that they were given. According to Ms. Palmer, by doing this, Combined ensures that women must work harder than men to earn the same amount of commission, achieve performance goals, and qualify for promotion.

C.    *Promotion*

This case involves Combined's "Seventh Essential Enhanced Sales Force" ("Seventh Essential"), which comprises 80% of Combined's work force. At Combined, the country is divided into geographical divisions, each headed by a district manager who reports to the national sales manager and Vice-President/Managing Director of Seventh Essential (both of whom are men). Beneath divisional managers are regional managers, then sub-regional managers, district managers, and finally, sales managers. Ms. Palmer asserts that there has never been a female divisional manager in Combined's 83-year history and there are only a handful of female regional managers, two of whom submitted declarations stating their belief that women, including themselves, were discriminated against at Combined. According to Ms. Palmer, significant promotion disparities exist at two points in the job level hierarchy: 40% of women are cut out at the district manager level and another 65% of women are blocked out at the regional manager level.

3

It is Ms. Palmer's contention that (1) even if women somehow make it to the regional manager level, those women have to work harder and encounter resistance from their male co-workers and subordinates every step of the way; and (2) these women are always passed up for promotion to divisional manager, even though they often outperform their male counterparts. For example, Casey McConnell, who was a regional manager during her employment with Combined, submitted a declaration stating that she had been turned down for promotions many times while less-qualified male co-workers got the promotions she requested. Ms. McConnell alleges that when she was finally promoted, she was continually harassed about her personal life and when she was denied requests for an additional sub-regional manager, one was assigned to another, much smaller state in her division that was run by a male regional manager whose region had not outperformed hers and as a result, she had to work much harder to reach a certain premium dollar base and was constantly threatened with demotion if she failed to reach it. Ms. McConnell also states that her regional office was 200 miles from her home, but her divisional manager refused to provide her with an office closer to her home even though she submitted numerous requests, and consequently, she had to convert her home into an office and was never reimbursed for those costs. Finally, Ms. McConnell asserts that she was passed up for promotion to the divisional manager level on at least three occasions while males with numbers inferior to hers were promoted to those positions and that despite her numerous complaints of sex discrimination to her divisional manager, nothing was ever done, and she was told to just "get over it."

When asked about the few number of women who make it to the regional manager level, Ronald Agypt, Vice President and Managing Director of Seventh Essential who reports directly

4

to Combined's president, stated that he believed women did not pursue the promotions because of familial responsibilities and admitted that he had never taken any measures, such as hiring an outside firm, to determine why so few women were being promoted. Ms. Palmer contends that Mr. Agypt's testimony is illustrative of Combined's intentional disregard for its alleged gender inequality.

### D. Harassment

In addition to the alleged gender disparities with respect to compensation and promotion, Ms. Palmer asserts that at every level of Combined, women are forced to endure harassment by male co-workers and managers, which usually takes the form of objectification, offensive sexual comments, and unwanted sexual advances. Such behavior, Ms. Palmer asserts, is rampant throughout Combined, often occurring on a daily basis. This harassment, according to Ms. Palmer, creates an environment of constant humiliation and degradation to women, sometimes rising to the level of physical violence, and complaints are ignored and sometimes result in intimidation. Some of the more troubling allegations set forth by Ms. Palmer involve sexual assaults and intimidation of the alleged victims to prevent legal action. While not all allegations of harassment rise to such a serious level, Ms. Palmer contends that it is the apathy towards and encouragement of the less violent forms of harassment that allows and increases the possibility that the more serious acts will occur. Ms. Palmer alleges that this misogynist environment inheres in the very foundations on which Combined rests, and as a result, all sexual forms of harassment, whether it be offensive comments or sexual assault, are tolerated by Combined at even the highest level of its management. Ms. Palmer asserts that it is Combined's deliberate indifference to the harassment of women that allows the widespread and continual harassment to

5

occur and remain unaddressed, and because women have no real recourse to address these wrongs, they are forced to endure ongoing harassment and a higher potential of violence against them.

### E.    *Training*

This alleged environment of sexual harassment, according to Ms. Palmer, also results in inferior training and thus a diminished chance at success within the company. Ms. Palmer alleges that while male sales agents were mentored and groomed during training sessions, women were degraded, humiliated, and harassed, and male managers refused to take female sales agents seriously. Such inferior training, Ms. Palmer alleges, ensures that women are held back and have a significantly smaller chance of generating premiums and consequently, a diminished opportunity for promotion.

### F.    *Company-Wide Policies*

Finally, Ms. Palmer alleges that the very structure and nature of Combined is what allows all forms of sexual discrimination to flourish and continue. Due to the centrally-organized structure of the company, Ms. Palmer alleges, the men in charge can and do foster an environment that denies women equal opportunities to earn compensation and promotion and creates fertile ground in which sexual harassment flourishes. Because advancement in Combined has always been directly tied to success in the insurance sales system, the allegedly inadequate training and sales opportunities are effective in holding women back, and because the highest levels of management are occupied by men who allegedly ignore and often encourage the humiliation and degradation of women, there is no recourse for the women who suffer in such an environment.

6

To make matters worse, according to Ms. Palmer, Combined has never taken any measures to study these gender disparities, and even though Combined's parent company, Aon Corporation, has enacted Equal Employment Opportunity ("EEO") policies for all its subsidiaries, such policies are ignored and unenforced. Ms. Palmer alleges that the Employee Handbook that is distributed to incoming sales agents at Combined contains a "problem solving procedure" that directs employees to report discrimination or harassment to their immediate supervisor or corporate headquarters. The problem, Ms. Palmer asserts, is that (1) immediate supervisors either ignore such complaints or are themselves committing the discrimination and harassment; (2) Combined invests minimal resources into EEO training, and even when such training is given, the trainer himself, who has no background in EEO matters or specific training, sometimes harasses women during those very sessions; and (3) when complaints are reported to corporate headquarters, they are not maintained in any uniform or comprehensive manner, and when they are investigated, the investigations fall far below industry standards, often consisting of a report simply stating that the allegations could not be corroborated and that the EEO policy was reiterated, but no disciplinary action taken. With respect to such investigative reports, Ms. Palmer contends that although such reports are supposed to be placed in the employee's personnel file, there is no system in place to make sure that this actually occurs.

## II.   DISCUSSION

Ms. Palmer seeks certification of the following class: "[a]ll women who, at any time on or after March 8, 2002, worked in Combined Insurance Company of America's Seventh Essential

Enhanced Sales Force and were sales agents or managers at some point during their employment with Combined."

### A. Standard for Deciding a Motion for Class Certification

While I may not conduct a preliminary inquiry into the merits of the underlying claims in deciding a motion for class certification, *Eisen v. Carlisle & Jaquelin*, 417 U.S. 156, 177-78 (1974), I can look beyond the pleadings to determine whether the requirements of Rule 23 are met. *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 677 (7th Cir. 2001); *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147 (1982). Ms. Palmer has the burden of demonstrating that all requirements for class certification are met. *Ret. Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

### B. Radmanovich v. Combined

As the parties are well aware, there is another putative class action suit involving Combined in this district, *Radmanovich v. Combined Insurance Co. of America*, N.D. Ill. Case No. 01-9502. The case was before Judge Alesia, who denied Ms. Radmanovich's motion for class certification, before it was reassigned to me. Neither party disputes that the underlying facts of *Radmanovich* and the present case are the same. The parties, however, strongly dispute the implications of Judge Alesia's opinion.

Judge Alesia denied class certification in *Radmanovich* because he found that Ms. Radmanovich failed to satisfy the predominance and superiority requirements of Rule 23(b)(3). The primary difference between *Radmanovich* and Ms. Palmer's case is that Ms. Palmer is not seeking compensatory relief. Ms. Palmer argues that she can meet the Rule 23(b)(2) requirements for injunctive relief and punitive damages can be certified under both Rule 23(b)(2)

and 23(b)(3). She asks this court to certify either a Rule 23(b)(2) class or a hybrid Rule 23(b)(2) and 23(b)(3) class.

C.    *Rule 23(a)*

Before I can consider whether Ms. Palmer can meet Rule 23(b)(2) or 23(b)(3) requirements, I must address whether Ms. Palmer can pass the first hurdle, the requirements under Rule 23(a), which are: numerosity, commonality, typicality, and adequacy of representation. Combined argues that the proposed class is too diverse and heterogenous to meet the latter three requirements. However, Judge Alesia, considering the same arguments in *Radmanovich*, concluded that all of these requirements were met, and after reviewing Judge Alesia's opinion and the facts of this case, I concur with Judge Alesia's ruling with respect to the Rule 23(a) requirements.

1.    Commonality and Typicality

Because this case, like *Radmanovich*, is a "pattern or practice" action, there are common issues of law and fact that meet the commonality and typicality requirements. To meet the commonality requirement, there must be questions of fact or law that are common to the class, and this requirement can generally be met with a common nucleus of operative fact. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (citing *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). A common nucleus of operative facts exists when a defendant has "engaged in standardized conduct towards members of the proposed class," *id.*, and commonality may be met when the defendant operates under a general policy of discrimination manifested through entirely subjective decision making practices. *Falcon*, 457 U.S. at 159 n.15. Additionally, in such cases,

factual variation among the class members' grievances does not destroy commonality. *Rosario*, 963 F.2d at 1018.

To meet the typicality requirement of Rule 23(a), the claims and defenses of the representative parties must be typical of the claims and defenses of the class. This inquiry is closely related to commonality. *Keele*, 149 F.3d at 595 (citing *Rosario*, 963 F.2d at 1018). Typicality is satisfied when the plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members" and the plaintiff's claim is "based on the same legal theory." *Id.* (quoting *De La Fuente v. Stokely Van-Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). The existence of factual differences will not preclude certification, *Ret. Chicago Police Ass'n*, 7 F.3d at 596-97 (citation omitted), and the [s]imilarity of legal theory is more important than factual similarity, so the presence of factual differences between the claims of the members of the proposed class is not fatal to a finding of typicality." *De La Fuente*, 713 F.2d at 232.

Both parties spend a great deal of time discussing Ms. Palmer's pattern or practice evidence in their briefs. However, I cannot consider the merits of Ms. Palmer's claim and consider the evidence presented by both parties only to the extent needed to "understand the claims, defenses, relevant facts and applicable substantive law." *Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 530 (N.D. Ill. 1998) (citation omitted). Ms. Palmer has properly pled a pattern or practice case, and although it is possible that she may be wrong or simply unable to prove her case, the pleadings and evidence presented meet the commonality and typicality requirements. Combined premises its argument that Ms. Palmer cannot satisfy these requirements primarily on the factual variations of the class members' grievances, but as the case law indicates, that alone is not enough to defeat findings of commonality and typicality.

10

## 2. Adequacy of Representation

With respect to adequacy of representation, Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation involves two inquiries: the adequacy of (1) the plaintiff's named counsel and (2) the named plaintiff's representation in protecting the distinct interests of the class members. *Ret. Chicago Police Ass'n*, 7 F.3d at 598. The class representative must "possess the same interest and suffer the same injury as the class members." *Uhl v. Thoroughbred Tech & Tel., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002) (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977).

The qualifications of Ms. Palmer's attorneys are not in dispute, and I find that Palmer's allegations on her own behalf assert the same injuries as the members of the class she seeks to represent, namely economic and emotional harm due to sex discrimination. I also find that she has the same interest in pursuing this case as the rest of the class members, which is to stop Combined's alleged systemic sex discrimination and punish Combined for its alleged wrongdoing. Combined argues that, because within the proposed class there are supervisory and non-supervisory employees, there can be no adequacy of representation. While this may be true in other cases, I find that what is alleged in this case is a pattern or practice that harms female employees at all levels, and for this reason adequacy of representation has been met.

### D. Rule 23(b)(2) and Injunctive Relief

Because Palmer meets the Rule 23(a) requirements, my next consideration is whether the requirements for injunctive relief under Rule 23(b)(2) are satisfied. Rule 23(b)(2) provides that if Rule 23(a) requirements are met, a class action may be maintained if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making

11

appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). I concur with Judge Alesia that even if a pattern or practice can be proven, determination of compensatory relief would require individual determinations that render a case of this magnitude unmanageable. However, I find that the nature of Ms. Palmer's allegations with respect to injunctive relief do not have the same fault. Such individualized assessments are not necessary when it comes to injunctive relief. *See, e.g., Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 876 (1984) (stating that "a finding of a pattern or practice of discrimination itself justifies an award of prospective relief to the class"). Ms. Palmer has alleged that Combined engages in a systemic practice of discrimination against female employees and refuses to take any steps to stop it, and at this point in the case, there remains a factual issue as to whether such a pattern or practice exists. If a pattern or practice is found to exist, an award of injunctive relief, which would likely consist of company-wide changes to Combined's practices and policies, would not require examination of each individual class member's grievances. Thus, I find that Ms. Palmer has satisfied the Rule 23(b)(2) requirements for injunctive relief.

### E. *Punitive Damages*

The more difficult inquiry is whether I can certify a class for punitive relief under Rule 23(b)(2) or 23(b)(3). Ms. Palmer presents a rather unique case in which injunctive and punitive, but not compensatory, relief is sought, and the relief is sought for the class as a whole, not the individual members of the class. My review of federal case law has not produced another Title VII class action case that proceeds in this manner. Combined argues that an award of punitive damages must bear a reasonable relationship to a compensatory damages award, so taking compensatory damages out of the equation precludes recovery of punitive damages. However,

12

nothing in the plain language of 42 U.S.C. §1981a conditions an award of punitive damages on an underlying award of compensatory damages, and therefore, Ms. Palmer can pursue punitive damages even in the absence of compensatory damages. *See Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1352 (7th Cir. 1995).

Combined also argues that taking compensatory damages out of the case does not solve the problems in *Radmanovich* and consequently, I should deny certification for the same reasons as Judge Alesia in *Radmanovich*. However, I have wide discretion in fashioning a Title VII remedy, *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 763 (1976), and this case presents a question that is not directly addressed in *Radmanovich*, nor in any circuit. Therefore, I am not required to follow *Radmanovich*, and there is no binding precedent for me to follow.

While I recognize that in most cases, an award of punitive damages requires a fact-specific inquiry into an individual plaintiff's circumstances, *see Lemon v. I.U.O.E.*, 216 F.3d 577, 581 (7th Cir. 2000), when the focus is on the defendant's conduct, as opposed to the class members' harms, and the relief is sought for the class as a whole, I find that such individualized proof is not *necessarily* required. In *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998), upon which the Seventh Circuit heavily relies in *Lemon*, the court acknowledged the possibility that punitive damages may be awarded on a class-wide basis without individualized proof of injury, "where the entire class or subclass is subjected to the same discriminatory act or series of acts." *Allison*, 151 F.3d at 417. Although the court in *Allison* felt that "[p]unitive damages cannot be assessed merely upon a finding that the defendant engaged in a pattern or practice of discrimination," *id.*, the plaintiff's case in *Allison* was pled somewhat differently than Ms. Palmer's, as the proposed class was seeking compensatory as well as punitive damages. Hence, the *Allison* court was not considering the same issue presented by Ms. Palmer. Also, the

13

proposed class being considered in *Allison* is different than Ms. Palmer's class in that the potential plaintiffs here are not spread across separate facilities, represented by different unions, working in many different skill groups, nor are they challenging policies that may have changed over the years or have been inconsistently implemented. The lack of actual facilities or other organizational structures is, according to Ms. Palmer, precisely one of the key reasons why the alleged discriminatory practices and policies are able to flourish and remain consistent. It is the rather unusual structure of Combined that distinguishes this case from other Title VII class actions involving the more typical workplace. Combined does make a valid point that nevertheless, each class member has suffered differing degrees of harm and thus, it appears that distribution of punitive damages will inevitably require individualized assessments. However, given the unique nature of this suit, and the possibility of distributing a punitive damages award without looking at the specifics of each class member, I find that this could be one of the rare exceptions to existing case law.

It is conceivable that an award of punitive damages could be awarded *pro rata*. In *EEOC v. O&G Spring and Wire Forms Speciality Co.*, 38 F.3d 872, 879-80 (7th Cir. 1992), the Seventh Circuit held that the district court did not abuse its discretion in distributing a lump sum class back pay award to eligible class members *pro rata*. Although it is unusual to award a lump sum class punitive damages award *pro rata*, the nature of this case allows for this possibility. In addition, punitive damages may be allocated by some other formula, to be determined at a later time, which would alleviate the need for individualized analysis. It is also possible that punitive damages could be awarded *cy pres* to an appropriate organization, in which case the individual differences between class members would be irrelevant. Exactly how an award of punitive damages might be distributed need not be decided at this stage–as long as there are viable options

14

that can adequately address manageability concerns, that is enough for class certification. Difficulty in correctly awarding damages to a class alone cannot defeat a motion for class certification. *See De La Fuente*, 713 F.2d at 233.

Therefore, having addressed general manageability issues, I will now determine whether a class can be certified with respect to punitive damages under either Rule 23(b)(2) or Rule 23(b)(3).

        1.     <u>Rule 23(b)(2)</u>

Rule 23(b)(2)'s suitability to practice or pattern suits is well-established in the case law. *See Jefferson v. Ingersoll Intern, Inc.*, 195 F.3d 894, 897 (7th Cir. 1999). However, when non-equitable relief is sought, Rule 23(b)(2) is problematic because it provides for binding litigation without guarantees of personal notice and an opportunity to opt out of the suit. As noted in *Lemon*, "Rule 23(b)(2) operates under the presumption that the interests of the class members are cohesive and homogenous such that the case will not depend on adjudication of facts particular to any subset of the class nor require a remedy that differentiates materially among class members." *Lemon*, 216 F.3d at 580. There are two ways of certifying a class under Rule 23(b)(2) when monetary relief is sought: (1) certification without notice or an opportunity to opt out only if the monetary damages are incidental to the injunctive or declaratory relief, *Allison*, 216 F.3d at 415, or (2) certification with notice and an opportunity to opt out using an exercise of plenary authority under Rules 23(d)(2) and 23(d)(5), as though the class was certified under Rule 23(b)(3). *Ingersoll*, 195 F.3d at 898. For monetary damages to be incidental to the injunctive or declaratory relief, the monetary damages must "flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief," cannot depend "in any significant way on the intangible, subjective differences of each class member's circumstances,"

15

and do not "require additional hearings to resolve the disparate merits of each individual's case." *Allison*, 151 F.3d at 415.

In my February 24, 2003, opinion denying Combined's motion to strike Ms. Palmer's class allegations, I stated that the request for punitive damages was not incidental to the injunctive and declaratory relief because punitive damages would depend on some degree on each class member's circumstances. However, in considering this motion, I have explored alternatives to distributing punitive damages that would not require such individualized inquiry, and after examining both parties' arguments and existing case law carefully, I have reconsidered my previous ruling. I now find that, given the unique circumstances of this case, the punitive damages are incidental to the injunctive relief and thus certify the proposed class under Rule 23(b)(2). The essential purpose of Ms. Palmer's request for punitive damages is in no way meant to compensate or make the class members whole. The very nature of punitive damages is to punish "evil motive or intent, or . . . reckless indifference to the federally protected rights of others." *Merriweather v. Family Dollar Stores of Indiana*, 103 F.3d 576, 581 (7th Cir. 1996) (citation omitted). Because the focus of punitive damages is on the defendant's conduct, not the class members, it is possible to fashion a punitive damages award that would punish Combined for past wrongdoing, if such wrongdoing was proved, and not require individualized inquiry. The other purpose of this punitive damages award would be to deter future wrongdoing, which may also have the effect of encouraging compliance with any awarded injunctive relief by ensuring that Combined understands the adverse monetary consequences of disobeying the injunction. This purpose could also be served without having to assess each class member's circumstances.

It remains an open question whether Rule 23(b)(2) can be used to certify a no-notice, no-opt-out class when compensatory or punitive damages are at issue. However, *Ingersoll* provides a way to certify a class under Rule 23(b)(2) when non-equitable relief is at issue while ensuring constitutionality and adequate due process, namely by treating the Rule 23(b)(2) class as if it were certified under 23(b)(3) and give notice and opportunity to opt out under Rule 23(d)(2)'s authority. *Ingersoll*, 195 F.3d at 898 (citing *Williams v. Burlington Northern, Inc.*, 832 F.2d 100, 103 (7th Cir. 1987)). In addition to preserving constitutionality and due process, I have decided to provide notice for two other reasons: (1) notification of class members will improve the litigation process by making class members aware of the case, thus allowing them to offer evidence or arguments which they believe might be helpful to either Ms. Palmer or Combined–in short, it will give them a chance to contribute to the case if they choose to do so; and (2) notice for *Radmanovich* must be sent out anyway, so no significant additional expenses will be incurred. In addition to providing an opportunity to opt out, this notice will inform those individuals who have filed suit on their own behalf seeking punitive damages that they are automatically excluded from the class and will inform all potential class members that because this suit does not seek compensatory damages, they do not have to opt out of this action to pursue those damages.

      2.      Rule 23(b)(3)

Although I have certified this class under Rule 23(b)(2), were I to have considered the applicability of Rule 23(b)(3), I would have concluded that the class would be certifiable under that subsection as well. Rule 23(b)(3) allows certification if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Because this case is directed

at the practices and procedures at Combined, and punitive damages can be awarded to the class as a whole without determining liability with respect to individual class members, those questions concerning Combined's alleged systemic discrimination predominate over individual questions. The very nature of a pattern or practice action requires evidence of widespread harm, which is usually shown through evidence concerning more than a single individual, and considering the large size of this class and the similarities among their allegations regarding Combined's policies and practices, a class action is the most efficient and effective way to litigate these claims.

Combined points out that approximately 20 women have filed individual claims against it, which it argues shows the inefficiency of allowing this class to move forward. However, while 20 would be a significant number if the class being proposed were in the hundreds, it is not so when the proposed class is in the thousands. Such a small percentage of the potential class choosing to pursue individual actions against Combined does not call the superiority of a class action in adjudicating these claims into serious question. With regard to the other considerations under Rule 23(b)(3), (1) the interests of the class members are better served through a class action, given the similarities among each class member's allegations; (2) there appears to be no undesirability of concentrating the litigation of these claims in this forum; and (3) because there are ways to distribute punitive damages without assessing each class member's injury, this class action is manageable. For all of these reasons, I would find that certification of this class is appropriate under Rule 23(b)(3).[1]

--------

[1] Since I am certifying this class under Rule 23(b)(2), I have not reached the question of what sort of notice must go out if this class were certified under Rule 23(b)(3).

## III. CONCLUSION

I realize that under most circumstances, certification of a class for monetary damages in an employment discrimination suit is inappropriate. However, the uniqueness of Combined's structure and the nature of the relief sought by Ms. Palmer makes certification possible in this case. Assuming, as I must for the purpose of this motion, that what Ms. Palmer has alleged is true, class-wide injunctive relief would be the superior remedy for the class as a whole and alone justifies allowing the class to move forward. It is possible that after litigation has gone further, it may appear that punitive damages are not suitable. Nevertheless, at this point in the case, I am quite satisfied that this is not the case.

It is possible for an employer, especially one of this size, to commit systemic discrimination against a class of protected individuals. However varied such individual harms may be, if they are all caused by the same pattern or practice, the wrongdoer should not be able to avoid class liability simply because the class cannot be certified for compensatory damages. I concede that cases suitable for class action on punitive damages would be quite rare but this case, as pled (but not proved), is rare. To allow the case to proceed as a class action with respect to both equitable and non-equitable relief best serves one of the primary purposes of Title VII, which is "to bring an end to the proscribed discriminatory practices." *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 720 (7th Cir. 1969). If a class is willing to sacrifice compensatory relief in their class action to meet Rule 23 requirements, thus evincing a paramount desire to stop systemic discrimination and prevent future harm, they should be allowed to proceed. The difficulties often encountered in certifying a Title VII class for compensatory damages should not preclude a class of plaintiffs from seeking alternative ways to serve the public interest by ending widespread discrimination (assuming such discrimination can be proved, which has not yet been

19

determined in this case). Taking the size of this defendant and the nature of Ms. Palmer's allegations into account, a class action appears to be the better way to effectively eradicate the alleged discrimination taking place on an institutional scale. *See Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194, 1201 (7th Cir. 1971) (citing *Jenkins v. United Gas Corp.*, 400 F.2d 28, 33-34 (5th Cir. 1968).

For the reasons above, Ms. Palmer's motion for class certification is GRANTED.

ENTER:

James B. Zagel

_____
James B. Zagel
United States District Judge

DATE: *August 29, 2003*